UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     ERIKA PATRICIA VELARDE | ) | Case No. 08-15794-SSM |
| | ) | Chapter 7 |
|                Debtor | ) | |
| | ) | |
| ERIKA PATRICIA VELARDE | ) | |
| | ) | |
|               Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 08-1475 |
| | ) | |
| EDUCATIONAL CREDIT MANAGEMENT | ) | |
| CORPORATION et al. | ) | |
| | ) | |
|              Defendants | ) | |

**MEMORANDUM OPINION**

       This is an action by a chapter 7 debtor to discharge approximately $22,600 in student loan debt owed to Educational Credit Management Corporation as well as a small loan owed to Sallie Mae which is not the subject of this opinion.[1]  A trial was held on June 18, 2009.  The plaintiff

---

[1] Because Sallie Mae did not file an answer to the complaint within the time period allowed, the debtor filed a motion for default judgment against Sallie Mae on June 9, 2009 (Doc. #41). However, at the trial, this court expressed concern as to whether Sallie Mae was properly served with the summons and complaint in this adversary proceeding.  Service of process in an adversary proceeding is governed by Rule 7004, Federal Rules of Bankruptcy Procedure.  Rule 7004 allows service on a corporation by first class mail "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed.R.Bankr.P. 7004(b)(3). Here, the summons and complaint were mailed to Sallie Mae at a post office box, and as such does not comport with Rule 7004.  At the trial, this court extended the deadline for service of process of the summons and complaint on Sallie Mae for 10 days and instructed the debtor to

(continued...)

1

was present in person and represented herself. The defendant appeared by its attorney of record. For the reasons stated, the court, although sympathetic to the debtor's circumstances, concludes that she has not met the high standard required in this Circuit for discharging student loans on the ground that payment would constitute an undue hardship. This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure.

Background and Findings of Fact

The plaintiff-debtor, Erika Patricia Velarde, filed a voluntary petition in this court on September 22, 2008, for relief under chapter 7 of the Bankruptcy Code and received a discharge on December 29, 2008. Among the liabilities listed on her schedules is a debt for student loans in the amount of $13,383 held by Sallie Mae and $22,086 held by Wachovia Education Finance. The debtor incurred that debt while obtaining post-secondary degrees from 2002 to 2005. The debtor filed the present action against Sallie Mae Servicing and ACS on November 6, 2008, seeking an undue hardship discharge of those student loan debts under § 523(a)(8) of the Bankruptcy Code. Educational Credit Management Corporation ("ECMC") was substituted as defendant for ACS by an order entered April 16, 2009. ECMC filed an answer requesting dismissal of the debtor's complaint with prejudice and a declaration that the student loan debts are non-dischargeable under § 523(a)(8) of the Bankruptcy Code.

---

[1](...continued)
request an alias summons and serve it and the complaint properly on Sallie Mae. The alias summons as to Sallie Mae was issued on June 23, 2009 (Doc. #48), and a final pre-trial conference has been set for November 9, 2009.

2

The debtor is a 40-year old woman who holds an Associate Degree in Microcomputer Specialization, which she received in 2002 from Northern Virginia Community College, and a Bachelor of Science Degree in Computer Information Systems, which she received in 2005 from Strayer University. She has one dependent, a thirteen-year old daughter who lives with her. Since 2002, she has experienced financial difficulties due to numerous hospitalizations for mental health issues and unemployment. Her schedules of monthly income and expenses (Schedules I and J) at the time the petition was filed reported monthly income of $1,914, and monthly expenses of $1,767, exclusive of any student loan payments. Currently, the debtor's only sources of income are Social Security Disability benefits payments of $1,380 per month and $600 per month in child support payments.

Since obtaining her degrees, the debtor has held numerous positions both in and outside of the field for which she studied, including positions as a data analyst, a department store customer service associate, and computer support specialist at a temporary employment agency. In addition, from 2001 to 2005, while attending school part-time, the debtor was employed as an administrative assistant at the Fairfax County Department of Family Services. However, the debtor has been unemployed since January 2008 largely due to her mental health condition, and she has been receiving Social Security disability benefits since November 2007.[2] Since 2004, the debtor's gross annual income has not exceeded $34,100, and it was less than $6,300 in 2007 and less than $1,000 in 2008. In addition, since December 2001, the debtor has been hospitalized four times for her mental health condition, and she is still in treatment, seeing both a psychiatrist

---

[2] Although her Social Security disability benefit payments started in November 2007, the debtor testified that she was actually approved for Social Security disability benefits in June 2007, and the payments were back-dated to the approval date.

and a psychotherapist. Although the debtor is actively seeking employment, she testified that she has not received any job offers and that she has a difficult time keeping a job due to her mental health condition. However, she also testified that she is currently working with the Virginia Department of Rehabilitative Services so that she can maintain future jobs for a longer period of time.

In November 2005, the debtor consolidated the student loans taken out to that date, and she made regular and timely payments on the consolidated loan from the end of 2005 through March 2008. She sought a loan forbearance due to unemployment and disability in March 2008, which was approved for 5 months, though November 2008. In addition, the debtor testified that she applied for a administrative discharge of her consolidated loan due to her disability, however, she did not complete the process for having the loan discharged before she filed her chapter 7 petition.

After the debtor filed the present complaint to discharge her student loan debts, ECMC, through its attorney, notified the debtor that she appeared to qualify for several alternative repayment programs through the William D. Ford Direct Loan Program. One program, the Income Contingent Repayment Plan, is based on the borrower's adjusted gross income and family size. *See* 34 C.F.R. § 685.209. Under the plan, the monthly payment amount is based on the debtor's adjusted gross income from the prior year, and the annual amount paid is twenty percent of the difference between the debtor's adjusted gross income and the federal poverty guidelines for her household size. *Id.* § 685.209(a)(2)-(3). If the debtor's income is below the federal poverty guidelines, as it currently is, then the required monthly loan payments would be zero dollars, and she would not be considered in default on the obligation. *Id.* The term of the

program is 25 years, *Id.* § 685.209(c)(4), with monthly payments adjusting each year, *Id.* § 685.209(a)(5), and at the end of the term, any remaining debt would be discharged. *Id.* § 685.209(c)(4)(iv). The debtor testified that she would be interested in the program if she qualified.

Conclusions of Law & Discussion

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A determination as to the dischargeability of a debt is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. 28 U.S.C. § 157(b)(2)(K). Venue is proper in this district. 28 U.S.C. § 1409(a). ECMC has been properly served and has appeared generally.

II.

Student loan debts are presumptively non-dischargeable in bankruptcy. § 523(a)(8), Bankruptcy Code. However, a student loan debt may be discharged if not discharging the debt "would impose an undue hardship on the debtor and the debtor's dependents." *Id.* A debtor seeking a discharge of student loan debts has the burden of proving by a preponderance of the evidence that repayment of the debts would pose an undue hardship. *Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 543-44 (4th Cir. 2008); *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 323 (4th Cir. 2008); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400 (4th Cir. 2005).

5

A.

In determining whether the repayment of student loan debts would impose an undue hardship, the majority of circuits, including the Fourth Circuit, apply the test first articulated by the Second Circuit in *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir. 1987).  *See, Frushour*, 533 F.3d at 400 (explicitly adopting the *Brunner* test in the chapter 7 context); *Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541 (4th Cir. 2003) (applying the *Brunner* factors in the chapter 13 context).  The *Brunner* test requires the debtor to establish:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

B.

The first prong of the *Brunner* test requires that the debtor show, by a preponderance of the evidence, that she cannot maintain a "minimal" standard of living for herself and her daughter, based on her current income and expenses, if forced to repay the loan. *Brunner*, 831 F.2d at 396.  In deciding whether the debtor has met her burden, the court should consider the debtor's standard of living, with a focus on whether the debtor has attempted to maximize her income and minimize her expenses. *Burton v. Educ. Credit Mgmt. Corp. (In re Burton)*, 339 B.R. 856, 870 (citing *U.S. Dep't of Health and Human Servs. v. Smitley (In re Smitley)*, 347 F.3d 109, 117 (4th Cir. 2003)); *see also Vermont Student Assistance Corp. v. Coulson (In re Coulson)*, 253 B.R. 174, 178 (W.D. N.C. 2000); *Ammirati v. Nellie Mae, Inc. (In re Ammirati)*, 187 B.R.

902, 907 (D. S.C. 1995). This does not require the debtor to live in poverty in order to satisfy the first factor of the *Brunner* test, but the court must nonetheless determine what is "minimally necessary" for the debtor's needs, including shelter, food, clothing, and medical expenses. *Id.* (citing *Salinas v. United Student Aid Funds, Inc. (In re Salinas)*, 240 B.R. 305, 314 (Bankr. W.D. Wis. 1999)). Once that amount has been determined, the court must then look at whether the debtor has sufficient funds remaining with which to make payments on her student loan debts. *Id*. at 870-71.

In one sense it may seem odd that there should even be an issue of current inability to pay, since the debtor's annual income for both 2007 and 2008 was below the Federal poverty level, and even at the time she filed her bankruptcy petition her annualized income was only marginally above the poverty level.[3] At the same time, by cutting her expenses to the bone, her schedules I and J actually shows a slight monthly surplus. As another judge in this district has noted, courts in the Fourth Circuit "generally do not find an inability to maintain a minimal standard of living where a debtor shows a surplus of income over expenses." *Id.* at 871; *see also Gill v. Nelnet Loan Srvcs., Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *Murphy v. Sallie Mae, et al. (In re Murphy)*, 305 B.R. 780, 795-96 (Bankr. E.D. Va. 2004). Further, those decisions from jurisdictions within the Fourth Circuit granting an undue hardship discharge of student loan debts did so "where there as a substantial deficiency of income to expenses for a debtor." *Id.* However, the court in *Burton* also noted that while the analysis under the first *Brunner* factor includes considerations in addition to whether or not there "a deficiency of

---

[3] The 2009 official Federal poverty guidelines for a family of two in the 48 contiguous states and the District of Columbia is $14,570 on an annual basis. *See* http://aspe.hhs.gov/poverty/09fedreg.shtml

monthly income to expenses," prior decisions from this Circuit "provide insight into the living circumstances which compel a court to find satisfaction or not of the initial *Brunner* prong." *Id.*

In the present case, the debtor offered little evidence as to her current income and expenses. Although the debtor testified that she currently receives a total of $1,980 each month in child support and Social Security Disability payments, an increase of $66 from the income reported on her schedules, she offered no evidence as to her current expenses. The debtor's expenses as reflected on her schedules were $1,767 per month at the time she filed her bankruptcy petition. To be sure, the debtor's expenses for herself and her thirteen year old daughter are quite low, as she pays, among other things, only $350 per month in rent, $30 each month for utilities, and $45 per month for automobile insurance. There is no evidence, nor does ECMC argue, that the debtor's expenses are unreasonable or represent unnecessary items, and it appears that the debtor has succeeded in minimizing her monthly expenses. It is perhaps because of her low expenses that her current income and scheduled expenses result in a net surplus income of $213 each month.

The question therefore remains whether the debtor's surplus income of $213 each month is sufficient income with which to make payments on her student loans. Little evidence was presented at trial as to what the debtor's monthly payments would be in order to pay off her student loans. Until March 2008, the debtor made regular monthly payments of $139. Based on ECMC's communication with the debtor regarding the William D. Ford Direct Loan Program, admitted as Defendant's Exhibit I, her monthly payments would be $130 under the standard repayment plan; $88 under the graduated repayment plan, increasing every two years over the 20 year term of the plan up to $197; and $0 under the ICRP, which is adjusted yearly based on the

debtor's adjusted gross income. Based on her net income of $213 per month, it is clear that regardless of the payment program, the debtor has sufficient surplus income to make her student loan payments and therefore fails to satisfy the first prong of the *Brunner* test.

Because the *Brunner* test, as applied in this Circuit, requires a debtor to present evidence sufficient to independently satisfy each of the three sub-tests, the court need not reach the remaining two issues — namely, whether the debtor's current financial situation is likely to continue for a significant portion of the repayment period, and whether the debtor has made good faith efforts to repay the loans. Suffice it to note that the debtor's current inability to hold a job commensurate with her education appears to be the direct result of a long-standing mental illness. What is lacking in the record, unfortunately, is medical evidence that would allow the court to determine the likelihood that her condition will, with proper treatment, improve over time. The debtor herself is not without hope that it can. In any event, the evidence as to the persistence of the debtor's current financial condition simply does not rise to the "certainty of hopelessness" level that the case law requires.[4] *Spence*, 541 F.3d at 544. With respect to the good faith test, this debtor, unlike many in the reported cases, made payments on her student for a considerable period of time before her mental illness caused her to stop working. There is no suggestion that she is voluntarily under-employed or has not pared her expenses to the bone. The only factor weighing against her in the good faith analysis is that she has not applied for the ICRP, which would have the effect of lowering her payments to zero for as long as her current financial

---

[4] As this court has previously noted, one of the problems with the application of the *Brunner* test is that it places something of an unfair evidentiary burden on debtors who—if they satisfy the first prong—almost by definition do not have the financial resources to obtain the expert testimony (for example, from a treating physician) that would be needed to satisfy the second prong by showing that the debtor's prognosis for recovery is poor.

Document      Page 10 of 12

situation exists. *Frushour*, 433 F.3d at 402; *Spence*, 541 F.3d at 544. However, whether failure to apply for the ICRP, standing alone, would prevent a finding of good faith, is an issue that the court need not reach, in light of the court's determination that the debtor has not satisfied the first prong of the Brunner test.

## Conclusion

As the Fourth Circuit has noted, "Congress, in enacting § 523(a)(8), set a high bar for a debtor seeking to discharge government-guaranteed educational loans." *Frushour*, 433 F.3d at 403. While the debtor's situation is compelling, the Fourth Circuit has refused to allow debtors to discharge their student loan obligations in cases where the circumstances were similar or where higher amounts of student loan debts were involved. *See e.g.*, *Spence*, 541 F.3d at 542, 544 (denying undue hardship discharge of $161,000 in student loan debts to debtor in her late 60s suffering from diabetes and high blood pressure); *Mosko*, 515 F.3d at 322, 327 (no undue hardship discharge for debtors with one dependent whose combined student loan debts totaled $120,573 despite fact that husband suffered from excessive daytime sleepiness which limited his employment prospects); *Frushour,* 433 F.3d at 396-97, 404 (no undue hardship for single parent debtor with one dependent and $12,149 in student loans); *Ekenasi*, 523 F.3d at 543 (undue hardship discharge more than two years before debtor's scheduled completion of chapter 13 plan premature despite $89,418 in student loan debt and debtor's six dependent children).

Here, the debtor has failed to show, by a preponderance of the evidence, that she cannot maintain a minimal standard of living for herself and her daughter, based on her current income and expenses, if forced to repay the loan. She has therefore failed to prove that she is entitled to an undue hardship discharge of her student loan debts under § 523(a)(8) of the Bankruptcy Code.

Because the debtor has not satisfied the first factor of the *Brunner* test, the court need not reach the second and third factors.

A separate judgment will be entered denying the debtor's request to discharge the student loans owed to ECMC on the ground of undue hardship.

Date: **August 23, 2009**          /s/ Stephen S. Mitchell
_____          _____
                                   Stephen S. Mitchell
Alexandria, Virginia               United States Bankruptcy Judge

**ENTERED ON DOCKET: August 23, 2009**

Copies to:

Erika Patricia Velarde
134 Clubhouse Drive SW, #301
Leesburg, VA 20175
Plaintiff *pro se*

Rand L. Gelber, Esquire
8000 Towers Crescent Dr., Ste. 1350
Vienna, VA 22182
Counsel for defendant